# W. I. FISHER, Respondent, v. A. H. BADGER, Appellant.

### Kansas City Court of Appeals, June 9, 1902.

1. **Dogs: KILLING OF: PROPERTY.** The law of Missouri recognizes a dog as property, and he may not be wantonly and needlessly killed.

2. ——: ——: **COMMON LAW.** Whenever a dog by his conduct becomes a nuisance, as at common law, he may be killed.

3. ——: ——: **PROTECTION OF HOUSE AND PROPERTY: FLAGRANTE DELICTO.** A man may protect his house from the intrusion and depredation of dogs, and it is immaterial that he kills after and not while the animal was in the act of committing the depredation.

4. ——: ——: ——: **INSTRUCTION.** If one has reasonable grounds to believe that it is necessary to kill a dog to protect his property, he is justified in so doing.

Appeal from Vernon Circuit Court.—*Hon. H. C. Timmonds*, Judge.

REVERSED AND REMANDED.

*C. G. Burton, T. J. Myers* and *J. E. Harding* for appellant.

(1) A dog breaking into a dwelling house in the nighttime, and doing mischief, or attempting to do mischief therein, may be killed by the owner of such dwelling house, and such killing is justified at common law. Wolf v. Chalker, 31 Conn. 121; Cooley on Torts (Ed. of 1880), p. 346; Barrington v. Turner, 3 Lev. 28; Protheroy v. Mathews, 24 Eng. Com. Law Rep. 465; 1 Hilliard on Torts (3 Ed.), 140, 562, 563. (2) A person has the right to protect his premises and property

Fisher v. Badger.

against the depredation of mischievous dogs, and for that purpose to use such means as are reasonably necessary, even to the killing of the dog. Canefox v. Crenshaw, 24 Mo. 199; Brauer v. English, 21 Mo. App. 491; Fenton v. Bisel, 80 Mo. App. 135; Gillum v. Sisson, 53 Mo. App. 516; Woolsey v. Haas, 65 Mo. App. 198; Cooley on Torts (Ed. of 1880), pp. 346, 347; Brill v. Flager, 23 Wend. (N. Y.) 354; Hilliard on Torts (3 Ed.), p. 563; Wolf v. Chalker, 31 Conn. 121; Hedges v. State, 11 Lea (Tenn.) 528; King v. Kline, 6 Pa. 318; Protheroe v. Mathews, 24 Eng. Com. Law Rep. 465; Parrot v. Hartsfield, 32 Am. Dec. 673; Spraight v. McGovern, 16 R. I. 658; Barrington v. Turner, 3 Lev. 28; Morse v. Nixon, 6 Jones 293; Williams v. Dixon, 65 N. C. 417; Brown v. Carpenter, 62 Am. Dec. 603-4. (3) If defendant had reasonable grounds to believe it was necessary to kill plaintiff's dog to protect his property, he was justified, and whether there was "reasonable grounds" was a question for the jury. King v. Kline, 6 Pa. 318; Life v. Blackwelder, 25 Ill. App. 673; Simmons v. Holmes, 15 L. R. A. 253; Hubbard v. Preston, 15 L. R. A. 249; Gillum v. Sisson, 53 Mo. App. 516. (4) The word "necessary" when used as above, does not mean "absolutely necessary." It means relatively so. Simmons v. Holmes, 15 L. R. A. 253.

*J. B. Journey* for respondent.

(1) The court committed no error in refusing defendant's offer of instructions. Because the propositions embraced in these instructions is not the law. (2) Whatever the law may be in other States, in the State of Missouri foxhounds have long since been recognized as property by our courts, and as such are as much entitled to the protection of the law as one's horse or one's cow or any other personal property. State v. Mease, 69 Mo. App. 582; Fenton v. Bisel, 80 Mo. App. 136; Dudley v. Love, 60 Mo. App. 420; Gil-

lum v. Sisson, 53 Mo. App. 517; Brauer v. English, 21 Mo. App. 490; Carpenter v. Lippitt, 77 Mo. 242; Bow-ers v. Horan, 17 L. R. A. 773. (3) Appellant's re-fused instructions asked the court to declare, as a mat-ter of law, that the appellant had the right to kill the dog in question simply because the dog had entered defendant's premises. This is not the law in this State, and the court rightfully refused to give the pro-posed instructions. It has been repeatedly held in this State that one has no legal right to kill his neighbor's dog simply because the dog is found trespassing on his premises. Fenton v. Bisel, 80 Mo. App. 136; Dudley v. Love, 60 Mo. App. 420; Gillum v. Sisson, 53 Mo. App. 517; Brauer v. English, 21 Mo. App. 490. (4) It has always been the law that one has the right to protect his person and his property, when in immediate dan-ger, even to kill his assailant, whether it be man or beast, but this rule does not apply any more particu-larly to dogs than it does to man or any other animal. And in applying this rule one must not use any more force or any harsher means than is reasonably neces-sary to repel the attack. This rule, too, applies more particularly to animate than to inanimate property. Bishop on Non-Contract Law, sec. 943. Johnson v. Patterson, 14 Conn. 1; Livermore v. Batchelder, 144 Mass. 179. The cases of Gillum v. Sisson, 53 Mo. App. 516, and Fenton v. Bisel, 80 Mo. App. 136, are decisive of every point raised by appellant in this appeal. (4) There is no law in this State requiring the owners of dogs to confine them at their peril. It is true that sec-tion 6975 and section 6976, chapter 100, Revised Stat-utes 1899, does rather enlarge the common-law rights of the owners of sheep or other domestic animals, in protecting them when in actual peril from the savage attack of marauding animals, but this law was not in-tended to prohibit the trespassing of dogs or any other animal upon another's premises, nor does it give the owners of such premises any greater right to shoot

down such trespassing animals, whether it be dogs, horses or cows.

BROADDUS, J.—Plaintiff, who was the owner of a foxhound, sued defendant for his value, who was shown to have shot and killed him on the night of the eleventh day of June, 1900. He recovered judgment for twenty dollars, from which defendant appealed. The evidence showed that the dog was a pure English foxhound, and a fine animal.

The defendant relied on the following facts for a defense. It was shown that on the night of the eleventh of June aforesaid, the defendant, who was living on a farm, was aroused from his sleep by his wife, who informed him that there was something in the house. He and his wife were sleeping in a front room, between which and his kitchen, was his dining-room, where his children were sleeping. That when defendant was roused by his wife, he heard a noise in the dining-room; that he got his gun, went outside and around to the kitchen door and said aloud, "come out," at which time the dog jumped through the screen door of the kitchen, and the defendant shot and killed him. He further proved that the screen door, the night before, when he went to bed, was securely closed and in good condition, but that it was torn when the dog came out through the rent, and that the dishes on the table had been disturbed during the night and a crock of milk had been emptied. He offered also to prove that a short time prior to the occurrence mentioned, some crocks of milk had been destroyed in the nighttime, which had been placed upon a back porch of his residence, but the court refused to let such evidence go to the jury.

The defendant asked the court to instruct the jury as follows:

"No. 5. The court instructs the jury that, if you believe from the evidence, that, on the night of the kill-

ing, plaintiff's dog, Mark, broke into the house of defendant and injured or destroyed any property therein, and that the defendant killed said dog as he jumped out of said house, then your verdict must be for the defendant.

"No. 6.    The court instructs the jury that, if you shall believe from the evidence, that on the night of the killing, plaintiff's dog, Mark, broke into the house of defendant and injured or destroyed any property therein, and that the defendant killed said dog as he jumped out of said house, and that said killing was reasonably necessary for the protection of defendant's property, your verdict must be for the defendant."

Both of said instructions were refused by the court.

The question presented for our consideration is one of law under the facts, whether defendant was justified in killing plaintiff's dog under the circumstances. The action of the defendant in killing plaintiff's dog can not be justified under the statute which authorizes a person to kill a dog that is, or has been, killing or worrying his domestic animals.    The law of this State recognizes a dog as property, and no one has the right to wantonly and needlessly kill him.    But while so recognized as property, they are not regarded in law as such domestic animals as the horse, the ox, the sheep, and the hog, for the reason that from his very nature he can not be subjected to the same conditions of restraint.    If one of the domestic animals escapes from the owner, and goes on the land of a stranger and injures his crops, he may impound it, and demand compensation for his damages.    If a dog be found upon one's land, it can not be impounded and it is not a trespass, and the landowner can not kill it unless it is necessary to protect his property.    Fenton v. Bisel, 80 Mo. App. 135, and cases cited.

By virtue of section 6975, Revised Statutes 1899, "in every case where sheep, or other domestic animals,

are killed or maimed by dogs, the owner of such animals may recover against the owner or keeper of such dog or dogs the full amount of damages, and the owner shall forthwith kill such dogs, and for every day he shall refuse or neglect to do so, after notice, he shall pay and forfeit the sum of one dollar, and it shall be lawful for any person to kill such dog or dogs.''

Section 6976, idem, provides that, ''if any person shall discover any dog or dogs in the act of killing, wounding or chasing sheep . . . or shall discover any dog or dogs under such circumstances as to satisfactorily show that such dog or dogs have been recently engaged in killing or chasing sheep, or other domestic animals, such person is authorized to immediately pursue and kill such dog or dogs.''

It will thus be seen under what circumstances the statute authorizes the killing of dogs for destroying or injuring domestic animals. But in so far as the same applies to cases where the dog is found worrying, chasing and killing sheep and other domestic animals, it is but a declaration of the common law, for a dog of such a character is a common nuisance. But dogs may commit depredations other than upon domestic animals, for which they may be killed. If one viciously attacks a person, the person may kill him to protect his person. A mad dog may be killed by any one, although there be no statute authorizing it. See Bouvier's Dic., 442, and cases cited. There may be many instances in which a dog may be killed, to protect property outside of the statute, and we unhesitatingly hold, upon principle, that if a man kills the dog of another necessarily, in the protection of himself, family, or property, he is justified in so doing. He has no other remedy.

It would be illogical to hold that a man could not defend his home from the intrusion and depredations of dogs. It is said that, ''every man's dwelling is his castle, that even the king may not enter, if forbidden,'' If the king can not enter against the owner's consent,

his dog can not enter. What is the owner to do when he has secured his dwelling by closing his door, and finds, on awakening, in the nighttime, that it has been forced and entered by a thieving dog, and his property stolen or destroyed? He has no redress against the owner of the dog, even if he knew who such owner is, unless he could bring home to him the knowledge of its mischievous propensities. If a vicious animal breaks into the close of the owner, and is found destroying property, he may kill him to protect such property. Parrott v. Hartsfield, 32 Am. Dec. 673. Every man's dwelling is sacred against the mischievous intrusions of either man or beast. An officer of the law can not enter against the consent of the owner, except in cases of felony, unless such officer is armed with a writ emanating from the State.

The facts of the case show that the defendant had secured the screen door to his kitchen, and that during the night he was awakened and found the plaintiff's dog, which he did not know, had broken the screen and entered, and as the dog came out he shot and killed him. Upon investigation he ascertained that his milk that was placed upon a shelf by his wife, had been destroyed by the dog. We believe, under the circumstances, he had the right to kill him. Because he killed the dog after and not while he was in the act of committing the depredation, could make little or no difference, for it is a well-known fact, that a thieving dog, when he has once obtained what he is in pursuit of, will come again for the same purpose. The exasperating experience of every farmer's wife attests that this is almost invariably the case with thieving dogs; and we hold that under the circumstances the court committed error in not permitting defendant to show that his milk had been destroyed a short time before in the night, which had been placed on a shelf in the back porch, as it was reasonably probable it was destroyed by the same dog. We think the defendant was entitled to have had

his case go to the jury, at least on said instruction No. 5, refused by the court. If he had reasonable grounds to believe that when he shot and killed the dog, that it was necessary to protect his property, he was justified. We further hold that a thieving dog is as much a common nuisance as a sheep-killing dog, and as such is not entitled to the protection of the law, for there is no way to avoid his depredations, except to kill him, unless the owner knowing his evil propensities, restrains him. But we know the latter is scarcely ever done, and the consequence is there are always more or less mischievous animals at large, unrestrained, thieving and committing depredations wherever the opportunity is presented. While it is true that the good and intelligent dog, the friend and companion of man, is justly considered valuable property, which no one may wantonly kill or injure, on the other hand, the vicious and thieving dog should be held as a common nuisance, which any person may abate who suffers therefrom.

For the reasons given the cause is reversed and remanded. All concur.